```
                UNITED STATES DISTRICT COURT
                 DISTRICT OF MASSACHUSETTS


                                    )
CHE BLAKE SOSA,                     )
        Plaintiff,                  )
                                    )
        v.                          )   Civil Action No.
                                    )   18-cv-12223-NMG
MASSACHUSETTS DEPARTMENT OF         )
CORRECTION, et al.,                 )
        Defendants.                 )
                                    )
```

**MEMORANDUM & ORDER**

**GORTON, J.**

Che Blake Sosa, who is incarcerated at MCI Cedar Junction, commenced this lawsuit on October 24, 2018, alleging that he is being subjected to excessive force and prolonged solitary confinement. He further claims that he is not receiving adequate medical attention and accommodations for his disabilities. Sosa has also filed a motion for a preliminary injunction, asking that this Court require the defendants to use waist chains instead of painful, knuckle-to-knuckle restraints behind his back when transporting him.

The Court has already ordered that a summons issue as to the Massachusetts Department of Correction ("DOC") and that it be served with the complaint and motion for a preliminary injunction. For the reasons stated below, the Court will order that summonses issue as to some of the individual defendants.

## I. Background

Sosa brings this action against the DOC and 33 past and present DOC officials, correction officers, and medical providers. His typed complaint is 52 pages long. Sosa also filed over 300 pages of exhibits. The complaint is in three counts. Count One is a claim under 42 U.S.C. for violations of the Eighth and Fourteenth amendments. See Compl. ¶¶ 177-189. Count Two is a claim for violations of Article I of the Massachusetts Declaration of Rights. See id. ¶¶ 190-194. Count Three is a claim under Title II of the Americans With Disabilities Act, 42 U.S.C. § 12131 et seq. ("the ADA"). See id. ¶¶ 195-215.

The Court summarizes the complaint, assuming, for the limited purpose of this memorandum and order, the veracity of all well-pled factual allegations and construing them in favor of Sosa.

Sosa has been convicted on multiple counts of aggravated rape and related offenses. He has been sentenced to over 95 years of incarceration. Sosa has been in the custody of the DOC since 2001, when he was a pretrial detainee. During that time, he was found guilty of several disciplinary infractions for which he was given time in the Department Disciplinary Unit ("the DDU"). Sosa has been housed in the DDU since June 6, 2003, and he is scheduled to remain there indefinitely. While

in the DDU, Sosa is held in solitary confinement, spending 23 or 24 hours a day in his cell.

Since childhood, Sosa has suffered from attention deficit hyperactivity disorder ("ADHD") and antisocial personality disorder. The DOC has recognized that Sosa suffers from these conditions, and at some point, provided him effective psychotropic medication for ADHD. However, the psychotropic treatment has been discontinued despite its ameliorative effect. Sosa is also subject to sleep deprivation.

Sosa has been suffering from severe degenerative bilateral join disease in his shoulders for over 20 years. Due to pain in his right shoulder that did not respond to a cortisone shot, Sosa underwent surgery in January 2005 for right shoulder impingement syndrome and osteoarthritis of the AC joint. Based on his shoulder condition, at some point, medical officials at MCI Cedar Junction prescribed for him a medical restriction from behind-the-back cuffing.

On July 25, 2006, Sosa stabbed two guards in an attempt to obtain their cell keys so that he could get access to a racist inmate who had attacked him. The same day, the medical restriction prohibiting cuffing behind the back was discontinued for security reasons, and it has never been reinstated.

Unprecedented security precautions concerning Sosa were also immediately implemented after the July 25, 2006 stabbing.

3

Since that time, whenever Sosa leaves his cell, he is accompanied by at least six members of the MCI Cedar Junction tactical response team outfitted with helmets, stab-proof vest, elbow guards, shin guards, and a five-foot, one-inch-thick Plexiglas shield.  Sosa is also cuffed everyday behind his back, knuckle to knuckle.  Because of his shoulder injury, this purportedly causes him extreme agony and worsens his condition. At times, Sosa misses medical appointments or does not seek medical care because of the severity of the pain he experiences during these transfers.  Sosa's multiple, informal complaints and formal grievances to reinstate the medical restriction of cuffing behind the back have been denied.

Sosa's physical and mental condition, combined with the lack of treatment therefor and the conditions of confinement in the DDU, allegedly is causing him to deteriorate: "Mr. Sosa is caught in a cycle of irresponsibility by the defendants, i.e. an untreated mentally ill man with a painful physical injury, held in solitary, subjected to restraints that cause further agony and injury."  Compl. ¶ 73.

## II. Discussion

Under 28 U.S.C. § 1915A, prisoner complaints in civil actions that seek redress from governmental entities or officers or employees of governmental entities are subject to a preliminary screening. See 28 U.S.C. § 1915A(a). The Court is required to dismiss any claims that are frivolous or malicious, fail to state a claim upon which relief can be granted, or seek monetary relief from a defendant who is immune from such relief. See 28 U.S.C. § 1915A(b). In conducting this review, the Court liberally construes Sosa's complaint because he is proceeding pro se. See Haines v. Kerner, 404 U.S. 519, 520-21 (1972). The Court also has examined the exhibits but only where Sosa has made a specific reference to an exhibit. Further, the Court considers only the content of an exhibit in conjunction with the corresponding allegation in the complaint.

### A. Claims under Title II of the ADA

For ease of reference, the Court will group the defendants into two categories. The Court will refer to the DOC and all of the defendants who are or were employed by the DOC as "the DOC Defendants."[1] The Court will refer to defendant Massachusetts Partnership for Correctional Healthcare, Inc. ("the MPCH") and

---

[1] Although perhaps not employed by the DOC, the Court will include Adriana Carillo, Orthopedic Surgeon for Lemuel Shattuck Hospital, in its reference to the DOC Defendants. Carillo was a state employee during the time relevant to this complaint.

5

its employees, past or present, who are defendants in this action as "the MPCH Defendants." The MPCH contracts with the Commonwealth of Massachusetts to provide medical care to prisoners at DOC facilities, including MCI Cedar Junction.

### 1. ADA Claims Against the DOC Defendants

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

The statute defines "public entity" to include "any State or local government" and "any department, agency, special purpose district, or other instrumentality of a State . . . or local government." 42 U.S.C. § 12131(1). An individual sued in his or her individual capacity is not liable under Title II of the Americans with Disabilities Act. See Wiesman v. Hill, 629 F. Supp. 2d 106, 112 (D. Mass. 2009). Therefore, Sosa's ADA claims against the individual DOC Defendants in their individual capacities will be dismissed with prejudice.

The Court will also dismiss with prejudice the ADA claims against the individual DOC defendants in their official capacities because they are wholly redundant to Sosa's ADA claim against the Commonwealth itself. See, e.g., S.S. by S.Y. v.

City of Springfield, Mass., 146 F. Supp. 3d 414, 426 (D. Mass. 2015) (dismissing as redundant ADA official capacity claims against individual municipal employees where ADA claim also asserted against the municipality).

### 2. ADA Claims Against the MPCH Defendants

As a private entity, MPCH is not liable under Title II of the ADA. See Matthews v. Penn. Dep't of Corr., 613 Fed. Appx. 163, 170 (3d Cir. 2015) (holding that private corporation providing medical care in a state prison was not a "public entity" for purposes of Title II of the ADA). Accordingly, all ADA claims against any of the MPCH Defendants are dismissed with prejudice.

### B. Claims under 42 U.S.C. § 1983

#### 1. Dismissal of Claims against the Commonwealth and Defendants sued in their Official Capacities

Section 1983 provides a right of action against a "person" acting under color of state law who violates plaintiff's federal constitutional rights. See 42 U.S.C. § 1983. A state, its departments or agencies, and its employees acting in an official capacity are not "persons" for purposes of § 1983. See Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989); Johnson v. Rodriguez, 943 F.2d 104, 108 (1st Cir. 1991). Therefore, the Court will dismiss with prejudice the § 1983 claims against the

7

Commonwealth and the individual DOC Defendants acting in their official capacities.

The Court will also dismiss with prejudice the "official capacity" claims against the individual MPCH defendants as redundant of the § 1983 claim against MPCH.

### 2. Dismissal Based on the Statute of Limitations

To state a claim upon which relief can be granted, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although a plaintiff is not required to plead explicitly that his claims are timely, a complaint fails to state a claim upon which relief can be granted where an affirmative defense, such as the statute of limitations, is evident on the face of the pleading. See Bock v. Jones, 549 U.S. 199, 215 (2007).

A claim under § 1983 borrows the appropriate state governing limitations unless contrary to federal law. See Wilson v. Garcia, 471 U.S. 261, 267 (1984); Rivera-Ramos v. Ramon, 156 F.3d 276, 282 (1st Cir. 1998) ("For section 1983 actions, federal law governs the date on which a cause of action accrues . . . while the length of the period and tolling doctrine are taken from local law."). The three-year statute of limitations prescribed by M.G.L. ch. 260, § 2A governs here. In other words, Sosa had three years from the date his claim

accrued to bring a lawsuit.  Absent any basis for tolling the statute of limitations, any claim that accrued prior to October 24, 2015 is time barred.

Sosa makes only scattered references to the dates of the alleged misconduct of specific defendants.  For the most part, the exhibits to the complaint are dated; many of them concern conduct that occurred before October 24, 2015.  Based on the allegations in the complaint and the exhibits which Sosa has identified as relevant to each defendant, the Court will dismiss as time barred the § 1983 claims against the following 17 defendants: James Saba, Luis Spencer, Carol Lawton, Lisa Mitchell, Stephanie Collins, Denise Vega, Thomas Groblewski, Jeffrey Fisher, Albert Franchi, Adriana Carillo, Rebecca Lubelczyk, Guido Guevara, Linda Farag, Joel Andrade, Rosemary Spaulding, Lawrence Weiner, and Michael Grant.  The Court will order dismissal of the § 1983 claims against these defendants without making any determination whether the complaint and designated exhibits contain sufficient factual material from which the Court may reasonably infer that these defendants violated Sosa's constitutional rights.

### 3. Dismissal Based on Insufficient Factual Allegations

The requirement that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to

relief," Fed. R. Civ. P. 8(a)(2), means that the complaint must "contain sufficient factual matter, accepted as true" to state a plausible claim for relief. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). This means that the complaint must provide a defendant sufficient detail to provide a defendant with "fair notice of what the . . . claim is and the grounds upon which it rests, " Silverstrand Invs. v. AMAG Pharm., Inc., 707 F.3d 95, 101 (1st Cir. 2013) (quoting Ocasio-Hernandez v. Fortuno-Burset, 640 F.3d 1, 12 (1st Cir. 2011)) (alteration in original), or the statement of the claim must "at least set forth minimal facts as to who did what to whom, when, where, and why," Calvi v. Knox County, 470 F.3d 422, 430 (1st Cir. 2006) (quoting Educadores Puertorriqueños en Acción v. Hernandez, 367 F.3d 61, 68 (1st Cir. 2004)). The plaintiff's obligation to provide the grounds of his claim "requires more than labels and conclusions." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).

Section 1983 provides a right of action against a person acting under color of state law who violates the plaintiff's federal constitutional rights. See 42 U.S.C. § 1983. In the context of a claim under 42 U.S.C. § 1983, "only those individuals who participated in the conduct that deprived the plaintiff of his rights can be held liable." Cepero-Rivera v. Fagundo, 414 F.3d 124, 129 (1st Cir. 2005). A commissioner, superintendent, or other supervisory employer cannot be held

10

liable under § 1983 based solely on the misconduct of a subordinate; the supervisor must have had some form of direct involvement in the alleged misconduct. See id.; Feliciano-Hernandez v. Pereira-Castillo, 663 F.3d 527, 536 (1st Cir. 2011) ("[N]ot every official who is aware of a problem exhibits deliberate indifference by failing to resolve it." (internal quotation marks omitted)); Bonner v. Outlaw, 552 F.3d 673, 679 (8th Cir. 2009) ("[A] warden's general responsibility for supervising a prison is insufficient to establish personal liability.").[2] Thus, to state a viable § 1983 claim, the specific factual content required by Fed. R. Civ. P. 8(a)(2) must not only identify, in a non-conclusory fashion, the wrongful conduct of a defendant, but must also permit the Court reasonably to infer that the defendant was directly involved in a constitutional violation.

Here, Sosa's factual allegations are largely conclusory. For many of the defendants, he does not identify any specific misconduct. He merely identifies the individual's position and

---

[2] Direct participation or involvement by a supervisory official in a constitutional violation does not necessarily require said official to be physically present when the official's subordinate commits the constitutional violation. See, e.g., Steidl v. Gramley, 151 F.3d 739, 741 (7th Cir. 1998) ("If the warden were aware of 'a systematic lapse in enforcement' of a policy critical to ensuring inmate safety, his 'failure to enforce the policy' could violate the Eighth Amendment." (quoting Goka v. Bobbitt, 862 F.2d 646, 652 (7th Cir. 1988))).

11

duties, cites to the Code of Massachusetts Regulations and asserts that the defendant was deliberately indifferent to Sosa's medical condition and/or suffering due to improper restraints.  See Compl. ¶¶ 138-169.  In support of these assertions, Sosa does refer to specific exhibits submitted with his complaint but the content of these exhibits does not suggest that defendants were directly involved in whatever constitutional violation may have occurred.

### a.   Dean, Mitchelle, Marshall

The Court will dismiss the claims against John Dean, Kelli Mitchelle, and John Marshall because Sosa has not made any well-pled factual allegations against these defendants.  They are included in the caption of the complaint and the recitation of the parties.  See Compl. ¶¶ 39, 48, 49.  Dean's name does not appear anywhere else in the complaint.  Sosa makes only conclusory allegations that Mitchelle "was responsible for providing medical services to Mr. Sosa" and that "[s]he was deliberately indifferent to Mr. Sosa's suffering by not performing physical therapy and assessment," id. ¶ 160, and does not refer to any exhibits with regard to Mitchelle or mention her name elsewhere in the complaint.  Sosa alleges that Marshall "was responsible for Mr. Sosa's care" but that "he was deliberately indifferent to Mr. Sosa's suffering due to improper restraints."  Id. ¶ 169.  Sosa does not refer to any exhibits

12

with regard to Marshall nor does his name appear elsewhere in the complaint.

### b. Wilkes, Ddungu, Grimes

The Court will dismiss the § 1983 claims against Harold Wilkes, Herbert Ddungu, and Jeffrey Grimes because Sosa fails to allege sufficient factual material from which the Court may reasonably infer that these defendants violated his constitutional rights.

Sosa identifies Wilkes as the DDU captain at MCI Cedar Junction. See id. ¶ 26. His name appears in the complaint only one other time. Referring to Exhibits 13-16 and 121, Sosa alleges that Wilkes was "deliberately indifferent to Mr. Sosa' suffering due to improper restraints and abuse by officer, [and that] [a]s DDU Captain, [Wilkes] was responsible for how Mr. Sosa was restrained." Compl. ¶ 147. Exhibits 13 through 16 consist of a January 14, 2016 letter from Attorney Jesse White of Prisoner Legal Services to MCI Superintendent Donald Levesque. The only reference therein to Wilkes is an assertion that he informed Sosa that the video recording of a use of force incident against Sosa "did not show the actions of the officers or the punches that were thrown." Ex. 15. That reference to Wilkes does not suggest that he violated Sosa's constitutional rights. Exhibit 121 is an appeal grievance submitted by Sosa. The appeal was denied by Superintendent Saba on September 23,

2015.  Any claim arising from the conduct at issue in the grievance is time barred.

Sosa identifies Ddungu as an MPCH Nurse Practitioner at MCI Cedar Junction, see Compl. ¶ 35, and his name appears in the complaint only one other time.  Referring to Exhibits 121, 148, 181, and 242, Sosa alleges that Ddungu "was responsible for providing medical services to Mr. Sosa," and that "[h]e was deliberately indifferent to Mr. Sosa's suffering due to improper restraints."  Id. ¶ 156.  Sosa further claims that Ddungu "said no when asked by the DDU Lieutenant in charge if the plaintiff needs to be accommodated for his disability by use of waist chains."  Id.

Exhibit 148 is a grievance by Sosa concerning an alleged incident that occurred on September 18, 2017.  Sosa recounts difficulties he had in being treated for chest pains while he was handcuffed behind his back.  He asks that the medical restrictions against double-cuffing behind the back be reinstated, or that, at a minimum, he be allowed to be transported for all medical services in waist chains.

The only reference to Ddungo in this grievance is a description of his initial reticence to approach Sosa.  Sosa does not suggest that Ddungo denied him medical treatment or that Ddungo's brief delay in coming to Sosa caused him any harm.  Even considering Ddungo's alleged statement to the DDU

14

lieutenant together with the content of Exhibit 148, there is insufficient factual material from which the Court can reasonably infer that Ddungo violated Sosa's constitutional rights. Exhibit 121 is dated June 23, 2015, and Exhibits 181 and 242 have 2014 dates. Any claim arising from the conduct at issue in these documents is time barred.

Sosa identifies Grimes as a former DDU captain at MCI Cedar Junction, see Compl. ¶ 46, and, again, his name appears in the complaint only one other time. Sosa alleges that Grimes "was responsible for Mr. Sosa's care," and that "[h]e was deliberately indifferent to Mr. Sosa's suffering due to improper restraints." Id. ¶ 167. Without referring to any exhibits, Sosa claims that Grimes "was asked by a podiatrist, Dr. King, to place the plaintiff in waist chains but Grimes denied this requested accommodation." Id. Without providing additional context for that alleged interaction, including the approximate date thereof, the statement neither provides Grimes with fair notice of the claim against him nor contains sufficient factual material from which the Court can reasonably infer that Grimes violated Sosa's constitutional rights.

### c. MPCH

In appropriate circumstances, a private entity that contracts with a state or local government to provide medical services in a prison may be deemed a government actor for

purposes of § 1983.  The entity and its employees may be held liable for constitutional violations in which they were directly involved.  With regard to the private entity itself, a plaintiff must show that the alleged injuries were inflicted pursuant to the entity's custom, policy or practice.  See Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 692 (1978) (concluding that § 1983 imposes liability on a municipal defendant "that, under color of some official policy, 'causes' an employee to violate another's constitutional rights"); Moore v. St. John's Hosp., 670 Fed. App'x 395, 398 (7th Cir. 2016); (applying Monell standard to private contracted healthcare provider and government treatment and detention center); Gannaway v. PrimeCare Med., Inc., 652 Fed. Appx. 91, 94 (3d Cir. 2016) (same).

Referring to Exhibits 3, 50-51, 91-92, and 110-111, Sosa alleges that MPCH was "deliberately indifferent to Mr. Sosa's suffering due to improper restraints."  Compl. ¶ 148.  These exhibits indicate that various MPCH employees have stated that modified restraints are not medically indicated for Sosa. However, nothing in these exhibits or the complaint suggest that the conclusion of any MPCH employee that modified restraints were not medically indicated for Sosa was the result of MPCH's custom, policy or practice.

**3.  Dismissal of Individual Capacity § 1983 Claims**

16

The Court dismisses without prejudice the individual capacity § 1983 claims against James Saba, Luis Spencer, Carol Lawton, Lisa Mitchell, Stephanie Collins, Denise Vega, Thomas Groblewski, Jeffrey Fisher, Albert Franchi, Adriana Carillo, Rebecca Lubelczyk, Guido Guevara, Linda Farag, Joel Andrade, Rosemary Spaulding, Lawrence Weiner, Michael Grant, John Dean, Kelli Mitchelle, John Marshall, Harold Wilkes, Herbert Ddungu, Jeffrey Grimes, and MPCH.  If Sosa believes that he can cure the pleading deficiencies of the § 1983 claims against these defendants, he may seek to amend the complaint in accordance with Rule 15(a) of the Federal Rules of Civil Procedure.

### C. Massachusetts Declaration of Human Rights

To the extent a private right of action under the Massachusetts Declaration of Human Rights exists, see Lopes v. Riendeau, 177 F. Supp. 3d 634, 671 (D. Mass. 2016) (assuming without deciding that a cause of action can be directly brought under Article 26), claims against all defendants as to whom § 1983 claims are being dismissed shall also be dismissed for the same reasons articulated with respect to the federal constitutional claims.

## III. Order

In light of the foregoing, the Court hereby orders:

1.  The ADA claims against the individual DOC Defendants in their individual and official capacities are DISMISSED with

prejudice.

2. The ADA claims against MPCH and its employees are DISMISSED.

3. The § 1983 claims against the DOC and the § 1983 claims against the individual defendants in their official capacities are DISMISSED with prejudice.

4. The § 1983 individual capacity claims and claims under the Massachusetts Declaration of Human Rights against the following defendants are DISMISSED without prejudice: James Saba, Luis Spencer, Carol Lawton, Lisa Mitchell, Stephanie Collins, Denise Vega, Thomas Groblewski, Jeffrey Fisher, Albert Franchi, Adriana Carillo, Rebecca Lubelczyk, Guido Guevara, Linda Farag, Joel Andrade, Rosemary Spaulding, Lawrence Weiner, Michael Grant, John Dean, Kelli Mitchelle, John Marshall, Harold Wilkes, Herbert Ddungu, Jeffrey Grimes, and MPCH. If Sosa believes that he can cure the pleading deficiencies of the § 1983 claims against any of these defendants as described in the Memorandum above, he may seek to amend the complaint in accordance with Rule 15(a) of the Federal Rules of Civil Procedure.

5. The Clerk shall issue summonses for the following defendants: Carol Higgins O'Brien, Michael Rodrigues, Stephen Kennedy, Vanessa Rattigan, James M. O'Gara, Jr., Jennifer Vieira, Joann Lynds, Ann Evans, and Aysha Hameed.

6.   Sosa is responsible for serving the summonses, complaint, motion for a preliminary injunction, and this order on these defendants in compliance with Rule 4 of the Federal Rules of Civil Procedure.  Sosa must complete service within 90 days of the date the summonses issue.  Failure to complete service in a timely fashion may result in dismissal of the Massachusetts Department of Correction as a party to this action without further notice from the Court.  See Fed. R. Civ. P. 4(m); Local Rule 4.1.

7.   Because Sosa is proceeding in forma pauperis, he may elect to have the United States Marshals Service ("USMS") complete service with all costs of service to be advanced by the United States.  If so asked by Sosa, the USMS shall serve a copy of the summons, complaint, motion for a preliminary injunction and this order upon all defendants as to whom a summons has issued, as directed by Sosa.  Sosa is responsible for providing the USMS all copies for service and for completing a USM-285 form for each party to be served.  The Clerk shall provide Plaintiff with forms and instructions for service by the USMS.

**So ordered.**

/s/ Nathaniel M. Gorton<br>Nathaniel M. Gorton<br>United States District Judge

Dated: August 2, 2019