**United States District Court**
**District of Massachusetts**

| | |
|---|---|
| CHE BLAKE SOSA, | ) |
| | ) |
|        Plaintiff, | ) |
| | ) |
|        v. | )    Civil Action No. |
| | )    18-12223 |
| MASSACHUSETTS DEPARTMENT OF | ) |
| CORRECTION, et al., | ) |
| | ) |
|        Defendants. | ) |
| | ) |

**MEMORANDUM & ORDER**

**GORTON, J.**

Che Blake Sosa ("Sosa" or "plaintiff") commenced this lawsuit on October 24, 2018, against the Massachusetts Department of Correction ("the DOC"), the Massachusetts Partnership for Correctional Health ("the MPCH") and numerous individual defendants associated with or employed by those entities (collectively, "the defendants"). In his original complaint, filed pro se, Sosa alleged that he has been subject to the use of excessive force, prolonged solitary confinement, inadequate medical attention and insufficient accommodations for his medical disabilities.

After several years of convoluted proceedings, this Court set a deadline for proposed amendments to the pleadings. Sosa, with the assistance of counsel, submitted the pending motion to

file an amended complaint pursuant to Fed. R. Civ. P. 15(a)(2) on July 22, 2022 (Docket No 133).  For the reasons that follow, the motion will be allowed, in part, and denied, in part.

## I.   __Background__

Sosa alleges that he suffers from severe shoulder pain when handcuffed behind his back and from mental health problems due to his prolonged solitary confinement.  The Court reviewed plaintiff's original complaint and its more than 300 pages of voluminous exhibits pursuant to 28 U.S.C. § 1915A(a) at the time it was filed.  In August, 2019, plaintiff's claims against multiple defendants were dismissed without prejudice because of potentially curable pleading deficiencies.  The Court issued summonses for the remaining defendants.  Shortly thereafter, the Court appointed <u>pro</u> <u>bono</u> counsel to assist Sosa with the litigation of his then-pending first request for a preliminary injunction.

In November, 2019, the Court ordered the parties to obtain a report from an independent medical examiner.  In February 2020, the Court convened a hearing during which the parties discussed the results of the medical examination.  At that time, the DOC confirmed it was using double handcuffs to reduce the pain Sosa was experiencing and averred it would create custom handcuffs that would be even more effective.  Plaintiff filed a second motion for a preliminary injunction in March, 2020.

Because the second motion restated and superseded the original motion, the Court denied the original motion as moot and held the second under advisement.  At a subsequent status conference in July, 2020, the parties reported that custom handcuffs had been used successfully for two months and the Court ordered the DOC to continue to use custom restraints on Sosa.

On October 8, 2020, this Court issued a memorandum and order denying plaintiff's second motion for a preliminary injunction.  Sosa filed an interlocutory appeal of that ruling which is still pending.  After a lengthy period of time during which the DOC filed additional status reports concerning the conditions of Sosa's ongoing incarceration and its effort to ameliorate his shoulder pain, the Court convened a scheduling conference in April, 2022, at the request of the parties.

During that scheduling conference, the Court set a deadline for the filing of amended pleadings which was twice extended. Plaintiff timely submitted the pending motion for leave to file an amended complaint on July 22, 2022.  In his proposed amended complaint, Sosa seeks to assert additional causes of action and introduce claims against more than a dozen named defendants, as well as multiple Jane and John Doe defendants.  All of the named defendants Sosa seeks to add to the amended complaint had been included in his original complaint but dismissed pursuant to this Court's August, 2019, memorandum and order.

Defendants note in their opposition to the pending motion that plaintiff did not serve in advance the proposed amended complaint on the new parties he seeks to add as required by Local Rule 15.1(b).  This Court has discretion to excuse noncompliance with the local rules and does so here because the opposition to the motion to amend "likely sets forth all the reasons why the court could deny the motion." Palacio v. City of Springfield, 25 F. Supp. 3d 163, 170 (D. Mass. 2014).  To the extent that newly added defendants choose to proffer additional reasons why they should not be added, they may do so in their responsive pleadings.

## II.   **Motion to Amend**

### A. Legal Standard

A party may amend its pleading by leave of the court, which should be "freely give[n] . . . when justice so requires". Fed. R. Civ. P. 15(a)(1); Holbrook v. Boston Scientific Corp., 20-CV-10671, 2020 WL 5540544, at *1 (D. Mass. Sept. 16, 2020).  Rule 15(a) affords courts broad discretion in deciding whether to allow or deny leave to amend. See U.S. ex rel. Ge v. Takeda Pharm. Co., 737 F.3d 116, 127 (1st Cir. 2013).  The standard for allowing amendments under Fed. R. Civ. P. 15(a) has often been described as "liberal," O'Connell v. Hyatt Hotels, 357 F.3d 152, 154 (1st Cir. 2004), and a reviewing court "must consider the totality of the circumstances" in making its determination.

Nikitine v. Wilmington Tr. Co., 715 F.3d 388, 390 (1st Cir. 2013).

A court acts within its discretion if it denies leave to amend for reasons of, inter alia, undue delay in filing the motion, repeated failure to cure deficiencies, undue prejudice to the opposing party or futility of amendment. U.S. ex rel. Gagne v. City of Worcester, 565 F.3d 40, 48 (1st Cir. 2009).  In assessing whether a proposed amendment would be futile, a court "must apply the standard which applies to motions to dismiss under Fed. R. Civ. P. 12(b)(6)." Adorno v. Crowley Towing and Transp. Co., 443 F.3d 122, 126 (1st Cir. 2006).  Thus, the court must accept the truth of the complaint's well-pled factual allegations and draw all reasonable inferences in favor of the plaintiff. See Ocasio-Hernandez v. Fortuno-Burset, 640 F.3d 1, 12 (1st Cir. 2011).  The court should not, however, accept legal conclusions clothed as facts or "allegations that merely parrot the elements of the cause of action." Id. (citation omitted).

**B. Application**

This motion to file an amended complaint comes more than three and a half years after plaintiff submitted his original complaint pro se.  Although that is an exceptional length of time, the particular procedural history of this case explains much of the delay and the motion was filed in accordance with the Court's scheduling orders.  Any prejudice to defendants is

mitigated by the circumstances and it would be unfair to reject the amended complaint for undue delay. See, e.g., Gladu v. Me. Dep't of Corr., 2022 U.S. Dist. LEXIS 101992, at *7 (D. Me. June 8, 2022).

The significant delay between the original and proposed amended complaint is relevant, however, insofar as deficiencies identified by this Court in its memorandum and order entered August, 2019 ("the 2019 Order"), have not been remedied.  Thus, the Court will focus on whether claims reiterated in the amended complaint have resolved the issues in the original complaint and whether any of the remaining claims are futile.

### 1.   Count I: 42 U.S.C. § 1983 for Deliberate Indifference to Osteoarthritis of Shoulder Joints

In its 2019 Order, this Court dismissed plaintiff's § 1983 claims against 17 defendants on the grounds that they were barred by the applicable three-year statute of limitations.  In his proposed amended complaint, Sosa spreads his § 1983 claims across three counts – for deliberate indifference to his osteoarthritis of shoulder joints, deliberate indifference to his mental illness and the conditions of his confinement - but does not buttress the underlying factual allegations.  Instead, he contends that the amended complaint states a "continuing violation" which allows him to sue based upon events that took place outside the three-year limitations period.

Count I alleges that defendants acted with deliberate indifference towards plaintiff's shoulder osteoarthritis and improperly denied his grievances on the subject. Although asserted in the context of an amended pleading, Sosa's claim of a continuing violation is a new legal argument rather than a substantive, factual amendment. In any event, his new theory is unavailing. The First Circuit Court of Appeals has explained that the continuing violation doctrine allows a plaintiff to delay the filing of his suit

> until a series of wrongful acts blossoms into an injury on which suit can be brought . . . . [and applies only] under certain narrow conditions.

Gorelik v. Costin, 605 F.3d 118, 122 (1st Cir. 2010) (citation omitted).

Plaintiff avers that he suffered severe pain each time he was subjected to behind-the-back handcuffing and that the grievances he submitted were denied. Although such events are similar to one other, each involved a discrete act giving rise to a distinct alleged injury. Acts which occurred before October 24, 2015, are therefore barred by the statute of limitations regardless of whether similar acts occurred within the limitations period. See, e.g., Gray v. Englander, 2022 U.S. Dist. LEXIS 99581, at *4-6 (D.N.H. Apr. 20, 2022) ("[O]nce a plaintiff is injured by a discrete act or omission   . . . the

limitations period begins to run then, even when additional misconduct occurs.").

Sosa's contention that the continuing violation doctrine is applicable rests on his misunderstanding that a plaintiff who has suffered injuries from multiple, <u>discrete</u> acts may "reach back to the beginning of the series of wrongful acts, even if it is outside the limitations period".  Plaintiff cites <u>Heard</u> v. <u>Sheahan</u>, 253 F.3d 316 (7th Cir. 2001), which held that a plaintiff can sue based upon events occurring outside the statutory period if they resulted in injuries which were the "consequence of a numerous and continuous series of events." <u>Id.</u> at 319.  He also relies upon <u>Jensen</u> v. <u>Frank</u>, 912 F.2d 517 (1st Cir. 1990), which described a "serial violations" version of the continuing violation doctrine characterized by related acts that recur repeatedly within and outside the statutory limitations period. <u>Id.</u> at 522.

> The United States Supreme Court clarified in 2002 that
>
> discrete discriminatory acts are not actionable if
> time barred, even when they are related to acts [which
> are timely] . . . . The Court of Appeals applied the
> continuing violations doctrine to what it termed
> "serial violations," holding that so long as one act
> falls within the [limitations] period, discriminatory
> and retaliatory acts that are plausibly or
> sufficiently related to that act may also be
> considered for the purposes of liability. With respect
> to this holding, therefore, we reverse.

AMTRAK v. Morgan, 536 U.S. 101, 113-14 (2002) (internal citation omitted).

Thus, under the continuing violation doctrine, a plaintiff may file suit based upon multiple acts that result in a cumulative injury even if some of those acts occurred outside the statute of limitations period. See Ayala v. Shinseki, 780 F.3d 52, 57 (1st Cir. 2015) (explaining that the doctrine applies to claims "that by their very nature required repeated conduct to establish an actionable wrong"). The doctrine does not, however, apply to discrete acts which occur outside the statute of limitations period and immediately establish an actionable claim. Id. Sosa's deliberate indifference claims are of the latter kind and therefore the continuing violation doctrine is not applicable. See also, Limestone Dev. Corp. v. Vill. of Lemont, 520 F.3d 797, 801 (7th Cir. 2008) (noting that the doctrine is "not about a continuing, but about a cumulative, violation"); cf. Shomo v. City of N.Y., 2009 U.S. App. LEXIS 23076, at *9-11 (2d Cir. Aug. 13, 2009) (explaining that deliberate indifference to a serious medical need can constitute a continuing violation if a policy of "disregarding treatment recommendations" gives rise to a cumulative injury).

The Court will therefore consider only allegations in the amended complaint which relate to events that occurred within the statute of limitations period. The amended complaint does

not adequately explain the timing or the offensive nature of the conduct of Carol Higgins O'Brien, Aysha Hameed, Stephen Kennedy, Carol Lawton, Denise Vega, Harold Wilkes, Thomas Groblewski, Jeffrey Grimes or the Jane/John Doe defendants.  Although some of those defendants, such as Carol Higgins O'Brien, were purportedly employed by the DOC within the statutory limitations period (e.g. "on or about 2014-2016"), the Court cannot infer from that or the complaint's sparse, generic descriptions of conduct the occurrence of a non-time-barred, discrete act.  The facts alleged with respect to Luis Spencer, James Saba, Lisa Mitchell, Jeffrey Fisher, Adriana Carrillo, Rebecca Lubelczyk, Rosemary Spaulding and Laurence Weiner indicate that their pertinent conduct took place before October 24, 2015.  Finally, no relevant conduct is alleged to have occurred at any time with respect to Michael Grant.

Plaintiff also claims that Albert Franchi, in 2015 and in 2017, and Herbert Ddungu, from 2014 to 2017, were aware of his osteoarthritis but failed to modify the handcuffing practices applicable to him.  Those allegations are conclusory and do not state an Eighth Amendment violation.  Finally, Jennifer Viera was purportedly involved in plaintiff's care and wrote in November, 2017, that the ultimate decision as to the proper restraint for a prisoner was determined by security rather than medical staff.  Without any further context, that allegation

does not support an inference of liability for deliberate indifference.

For the foregoing reasons, the Court will permit Sosa's amended Count I to proceed against only Stephanie Collins, Michael Rodrigues, Vanessa Rattigan, Joann Lynds and James O'Gara but not the other putative defendants.

### 2.   Count II: 42 U.S.C. § 1983 for Deliberate Indifference to Mental Illness

Count II alleges that the DOC, numerous named defendants and multiple unnamed defendants exhibited deliberate indifference to Sosa's severe mental illness by denying his grievances and requests for relief.  For the reasons already stated above, any such violations were discrete acts giving rise to a specific injury and the continuing violation doctrine is therefore inapplicable.  In any event, Sosa proffers insufficient information about the nature of the subject individuals' conduct and whether any of it occurred after October 24, 2015.

Plaintiff asserts Count II against, inter alia, Carol Lawton, Denise Vega, Jeffrey Fisher and James O'Gara.  Apart from general descriptions of their roles at the DOC, the amended complaint does not allege relevant, timely acts or omissions by those four individuals.  With respect to the remaining named and unnamed defendants, the relevant portion of the amended

complaint refers to them collectively as having denied "requests for relief from [plaintiff's] psychologically-damaging isolation".

Given the 15-year period encompassed by Sosa's allegations, the vast majority of which is outside the statute of limitations period, the prospective defendants have not received fair notice of their purported unconstitutional conduct and this Court will not speculate as to whether any occurred within the limitations period.  Thus, the proposed addition of Count II will be denied.

### 3.  Count III: 42 U.S.C. § 1983 for Unconstitutional Conditions of Confinement

In Count III of the amended complaint, plaintiff alleges that the conditions of his confinement violated the Eighth Amendment.  In particular, he suggests that the deterioration of his mental health was caused by his lengthy and uninterrupted confinement.  Sosa alleges, in essence, that the conditions of his prolonged confinement caused a cumulative injury over time and thus constituted a continuing violation of the Eighth Amendment. See Gonzalez v. Hasty, 802 F.3d 212, 224 (2d Cir. 2015) (explaining that an Eighth Amendment claim regarding the conditions of a plaintiff's confinement "typically accrues only after . . . a prolonged period of time" and holding that "the continuing violation doctrine should be applied").

In order to state a claim that one's conditions of confinement violated the Eighth Amendment, a plaintiff must allege that they posed an objectively excessive risk to his health or safety and the defendant was subjectively "deliberately indifferent" to those risks. See Leite v. Bergeron, 911 F.3d 47, 52 (1st Cir. 2018) (citations omitted). Defendants contend there are legitimate security and disciplinary reasons which provide a penological justification for the conditions of Sosa's confinement. See, e.g., Feijoo v. Mass. Dep't of Pub. Safety, 62 F. Supp. 3d 198, 200 (D. Mass. 2014) ("The Eighth Amendment prohibits only those conditions of confinement that lack all penological justification[.]") (citing Rhodes v. Chapman, 452 U.S. 337, 346 (1981)); Stewart v. Wexford Health Sources, Inc., 14 F.4th 757, 764 (7th Cir. 2021) ("[A] court should give deference to prophylactic or preventative security measures[.]") (citing Whitley v. Albers, 475 U.S. 312, 322 (1986)).

Although a justification grounded in security concerns and record evidence would be relevant at summary judgment, it cannot be considered at this stage. See Unitt v. Bennett, 18-CV-11373, 2020 U.S. Dist. LEXIS 59051, at *13 n.5 (D. Mass. Apr. 3, 2020) (explaining that the determination of whether prison conditions violate the Eighth Amendment is a "purely legal determination" that requires a "fully developed record" to decide). Rather,

- 13 -

the Court must accept the facts as pled by Sosa and draw all reasonable inferences in his favor. See Ocasio-Hernandez, 640 F.3d at 12. Under that standard, plaintiff has adequately alleged the objective component of his Eighth Amendment claim due to the extraordinary length of his confinement and the resulting deterioration of his mental health. See, e.g., Porter v. Clarke, 923 F.3d 348, 357 (4th Cir. 2019) (holding "that solitary confinement poses an objective risk of serious psychological and emotional harm to inmates, and therefore can violate the Eighth Amendment") (citations omitted).

The amended complaint falls short, however, of plausibly alleging the deliberate indifference of many of the defendants. See Ashcroft v. Iqbal, 556 U.S. 662, 686-87 (2009). Deliberate indifference is a disregard for inmate health and safety characterized by "obduracy and wantonness, not inadvertence or error in good faith." See Leite, 911 F.3d at 52 (citation omitted). A culpable state of mind exists where the defendant had "actual knowledge of impending harm, easily preventable," but nevertheless failed to take steps to prevent that harm. Id. at 52-53 (citation omitted). It is something more than negligence but less than the intention to cause harm or the knowledge that harm will necessarily result. Id. at 53 (citation omitted).

Plaintiff's allegations with respect to the culpability of many of the defendants are conclusory and do not support an inference of deliberate indifference.  The pertinent allegations against Luis Spencer, Michael Rodrigues, Carol Higgins O'Brien, Joann Lynds, Joel Andrade, Lawrence Weiner, and Michael Grant consist of a recitation of each of their roles and a blanket assertion that they were collectively responsible for denying his "requests for relief from the psychologically-damaging isolation".  Such allegations are insufficient to state a claim of deliberate indifference without further context or factual support. See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (holding that a complaint must contain non-conclusory factual allegations that "raise a right to relief above the speculative level").  Sosa's claims against the various Jane and John Doe defendants are even more bereft of context or support.

The amended complaint contains more substantial allegations with respect to the remaining defendants named in Count III. Plaintiff alleges that Denise Vega, Harold Wilkes and Jeffrey Grimes were directly responsible for administration of the DDU and "involved in the decision-making regarding whether an inmate should remain in the DDU."  According to the amended complaint, those three defendants, as well as Lisa Mitchell, could have facilitated plaintiff's access to outside medical appointments by altering the applicable handcuffing practices but refused to

do so.  Furthermore, plaintiff alleges that James Saba, Stephen Kennedy, Stephanie Collins, Vanessa Rattigan and Linda Farag knew he was not leaving his cell but denied any modification to the conditions of his confinement or the applicable handcuffing practices.

Even so, the amended complaint is devoid of specific allegations about when those actions took place.  The continuing violation doctrine requires that at least one of the complained-of acts occurred within the limitations period.  See, e.g., Ayala, 780 F.3d at 57; Shomo, 2009 U.S. App. LEXIS 23076, at *14-15 (holding there was no actionable claim under the continuing violation doctrine because plaintiff did not "allege acts involving [the defendant] that fall within the three-year statutory period").

Sosa has alleged that James Saba, Stephanie Collins and Vanessa Rattigan were employed by the DOC within the statutory period.  That information, in concert with their alleged conduct and the application of the continuing violation doctrine, is sufficient to infer that those defendants may have violated plaintiff's Eighth Amendment rights within the statute of limitations period.  There are no allegations, however, which permit such an inference with respect to defendants Denis Vega, Harold Wilkes, Jeffrey Grimes, Lisa Mitchell, Stephen Kennedy or Linda Farag.

Plaintiff has also asserted Count III against the DOC. That claim is futile because a state agency is not a "person" for purposes of § 1983. See Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989); Johnson v. Rodriguez, 943 F.2d 104, 108 (1st Cir. 1991).  Thus, the Court concludes that Count III has been adequately alleged against James Saba, Stephanie Collins and Vanessa Rattigan and will allow the amended claim to proceed against those three defendants.

### 4.  Count IV: Americans with Disabilities Act and Rehabilitation Act

Plaintiff's proposed amended claim under the Americans with Disabilities Act and Rehabilitation Act against the DOC will be allowed.

### 5.  Count V: Conspiracy to Violate 42 U.S.C. § 1983

In order to establish a civil rights conspiracy, a plaintiff must prove the existence of

> a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong against or injury upon another, and an overt act that results in damages.

Earle v. Benoit, 850 F.2d 836, 844 (1st Cir. 1988) (citation omitted).

The First Circuit has held that a complaint must state material facts which demonstrate the existence and scope of the alleged conspiracy with specificity. See Slotnick v. Staviskey,

- 17 -

560 F.2d 31, 33 (1st Cir. 1977).  Plaintiff here has not done so and specifically he has not supported his conclusion that defendants made mutual decisions based upon "pretext" or as part of a "Kafkaesque stratagem" to deny him relief to which he was entitled.  The proposed complaint does not allege facts to suggest there was an agreement among the defendants to violate Sosa's constitutional rights. See Diaz v. Devlin, 229 F. Supp. 3d 101, 111 (D. Mass. 2017) (explaining that the complaint failed to allege there was a "concrete agreement" to violate the plaintiffs' rights).  The Court will not allow plaintiff to amend his complaint by adding Count V.

### 6. Count VI: M.G.L. c. 12, § 11I for Violations of Article 26 of the Massachusetts Declaration of Rights

Plaintiff's proposed Count VI alleges that all defendants have violated his rights under Article 26 of the Massachusetts Declaration of Rights.  He initially purported to bring such claim pursuant to M.G.L. c. 12, § 11I but now concedes he cannot because of his failure to allege interference "by threats, intimidation, or coercion" as required by M.G.L. c. 12, § 11H. Plaintiff nevertheless contends that he can assert a claim for injunctive relief directly under the Massachusetts Declaration of Rights.

The weight of authority is against recognizing a direct
cause of action under the Massachusetts Declaration of Rights.
A recent decision of this Court held that where

> a statutory vehicle exists under the MCRA to address
> a direct claim under the Declaration of Rights or the
> Massachusetts constitution, it is not appropriate to
> find a direct right of action under the Declaration
> of Rights or the Massachusetts constitution.

Kam-O'Donoghue v. Tully, 16-CV-11054, 2019 U.S. Dist. LEXIS
154264, at *109 (D. Mass. Sep. 10, 2019).  Likewise, another
session in this Court emphasized that a right to sue directly
under the Massachusetts Declaration of Rights is "up to the
courts of Massachusetts" to consider and define. Pimentel v.
City of Methuen, 323 F. Supp. 3d 255, 274 (D. Mass. 2018).

To be sure, there is some support for plaintiff's
contention.  The Massachusetts Court of Appeals has explained
that, although a plaintiff may not seek damages directly under
the Massachusetts Declaration of Rights, he may be able to sue
an individual in her official capacity "to enjoin deprivations
of one's State constitutional rights." Doe v. Sex Offender
Registry Bd., 94 Mass. App. Ct. 52, 64, 112 N.E.3d 276, 286
(2018).

In the case at bar, plaintiff brought his claim under a
specific statutory provision against individuals acting in their
personal capacity and his allegations do not satisfy the
requirements of that statute.  Thus, it would be inappropriate

- 19 -

for this Court to construe that claim as a direct cause of action under Article 26 of the Massachusetts Declaration of Rights.

III.  <u>**Modifications to the Scheduling Order**</u>

The parties have submitted a Joint Motion to Further Modify Scheduling Order (Docket No. 154).  They purportedly require a substantial extension of time to complete discovery following this Court's decision on the motion for leave to file an amended complaint.  Although the Court recognizes that some extension of current deadlines is necessary, the scope of the amended complaint as allowed does not require months of additional discovery in this nearly five-year-old case.  The Court will therefore amend the scheduling deadlines as set forth in its accompanying order.

**ORDER**

For the foregoing reasons, plaintiff's motion for leave to file an amended complaint (Docket No. 133) is:

- with respect to Count I, as to Stephanie Collins, Michael Rodrigues, Vanessa Rattigan, Joann Lynds and James O'Gara, **ALLOWED** but as to the remaining defendants, **DENIED**;

- with respect to Count II, **DENIED**;

- with respect to Count III, as to James Saba, Stephanie Collins and Vanessa Rattigan, **ALLOWED** but as to the remaining defendants, **DENIED**;

- 20 -

- with respect to Count IV, **ALLOWED;**

- with respect to Count V, **DENIED;** and

- with respect to Count VI, **DENIED.**


The unexpired scheduling deadlines are amended as follows:

| Event | Deadline |
|---|---|
| Written Discovery will be served by | February 24, 2023 |
| Responses to Written Discovery will be served by | March 17, 2023 |
| Fact Discovery complete by | April 14, 2023 |
| Plaintiff's Experts Designated and Rule 26 Report produced | April 28, 2023 |
| Defendants' Experts Designated and Rule 26 Report produced | May 19, 2023 |
| Status Conference | May 22, 2023, at 11:00 A.M. |
| Expert Depositions to be completed | June 16, 2023 |
| Dispositive Motions filed by | July 14, 2023 |
| Oppositions to Dispositive Motions | August 4, 2023 |
| Final Pretrial Conference | September 7, 2023, at 3:00 P.M. |
| Jury Trial | September 11, 2023, at 9:00 A.M. |

**So ordered.**


/s/ Nathaniel M. Gorton
Nathaniel M. Gorton
United States District Judge

Dated:  February 2, 2023

- 21 -